DOMENICO IANNONE, as Administrator, etc., of VINCENT IANNONE, Deceased, Respondent, *v.* THE WEBER-McLOUGHLIN COMPANY, Appellant.

First Department, February 21, 1919.

Negligence — action for death of boy killed by automobile truck — contributory negligence — evidence.

In an action for the death of a boy eleven years of age killed by defendant's automobile truck, it appeared that while said boy and his companion were pushing a cart across the street after looking in both directions, as they testified, and seeing a black spot about two and one-quarter

blocks distant, the decedent was struck by defendant's truck which was coasting down the street; that although the street lamps were lighted, the defendant's chauffeur claimed that the boys were in a dark spot where they were not visible until he came upon them; that the car was stopped within a very short distance after the boy was struck.

*Held,* on all the evidence, that a judgment in favor of the plaintiff and findings that the defendant was guilty of negligence and that plaintiff's intestate was free from negligence should be reversed and a new trial granted.

DOWLING and MERRELL, JJ., dissented.

APPEAL by the defendant, The Weber-McLoughlin Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 11th day of May, 1918, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office on or about the 6th day of June, 1918, denying defendant's motion for a new trial made upon the minutes.

*Almond D. Fisk* of counsel [*William D. Reed,* attorney], for the appellant.

*Charles E. Rudolph, Jr.,* for the respondent.

SMITH, J.:

The plaintiff's intestate was killed by the defendant's automobile truck upon November 19, 1917, upon the Fordham road at a point east of the Landing road, in the borough of The Bronx, New York city. The plaintiff's intestate, eleven years and some months old, was assisting a young friend, Riccinetti, of the same age, in drawing some cinders, which had been picked up near the railroad property, to his friend's home. They proceeded in a northeasterly direction along the right side of Fordham road, until they came to a spot about opposite where the accident occurred. One of the boys apparently was drawing the little cart upon which the cinders were stored, while the other was pushing. When they got opposite the point in question they started to go across the road. The evidence of the boy's companion is that they, both of them, looked up and down the road. The time was about ten minutes before six and the day November nineteenth, so that it was dark and all the street lamps were lighted. Seeing nothing coming from the southwesterly

direction they looked in the northeasterly direction and upon the testimony of this boy they saw a black spot about two and one-quarter blocks northeast. This black spot turned out to be the automobile truck by which the plaintiff's intestate was injured. Both of the boys thereupon came to the back of the cart and started to push it over the road. The plaintiff's intestate had in his hand the two ropes by which the cart was steered. The width of the road in which they were pushing it was about ninety feet. They pushed on until they had passed both of the trolley tracks and when from four to ten feet upon the other side of the further track this automobile truck came down upon them and struck the plaintiff's intestate, inflicting injuries upon him which caused his death. The automobile truck was being driven home after the delivery of its last load, from the northeast to the southwest. There was a descent in the grade of about five feet to the hundred. It came down the Fordham road, as the policeman swears, at about fifteen miles an hour. The chauffeur puts the speed at ten miles an hour. The chauffeur had his power off and the car was coasting down this grade. Apparently there was nothing in the highway ahead of the truck except a street car. As to the exact location of this car there is conflict in the evidence. The chauffeur swears that he did not see the boy until he was within about five feet of him, that he heard a scream and heard something crush and immediately put on his brakes and stopped the car within four or five feet of the place of the accident. He then took the little boy up to the police station just north of the point in question and an ambulance was sent for and the boy was taken to the hospital. The plaintiff has recovered a verdict of $6,000 for the death of his child.

The question of the defendant's negligence presents some difficulty. The trial judge in his charge presented to the jury especially the fact that the chauffeur was coasting down this hill as an element from which they were authorized to find that the chauffeur was negligent. I can see nothing negligent in coasting down this hill. The descent was a gradual one. There is no evidence that in the coasting the car got to any extent beyond the control of the chauffeur. It was more easily stopped when coasting than if the power

had been on, because the brakes could at once have been applied without waiting to throw off power. The evidence of the chauffeur is to the effect that he did not see these boys with this cart until about five feet from them. The boys were small. The cart was low and small. The chauffeur swears that, notwithstanding these electric lights were all lighted, yet, by reason of the shadows, this particular spot where these boys were was a very dark spot. Moreover, this testimony is corroborated by the evidence of the plaintiff's witnesses Gibson Southwell and Florence McDonald, and the principal witness for the plaintiff, Riccinetti, himself. Sometimes the shadows caused by these electric lights are made the more obscure by reason of the bright light surrounding. The chauffeur, seated upon the left side of his car, was driving alone down the street. There was nothing to divert his attention. It is not at all probable that he saw these boys with their cart in time to escape them or to warn them and maliciously failed to do so. If he could see these boys at this spot in time to warn them or avoid them and failed to do so, there would clearly be sufficient ground for claiming negligence on his part. The fact of his failure to warn them or to avoid them is to an extent corroborative of his claim that they were in a dark spot where they were not visible until he came upon them. If so, I am unable to find sufficient evidence of negligence of the chauffeur to authorize a verdict against his employer.

In reaching this conclusion I am not unmindful of the testimony of the policeman to the effect that the car skidded thirty feet after striking the boy. The evidence, however, is to the effect that when found, the boy was only five feet from the rear wheel of the truck. All the other evidence is to the effect that the car stopped within a very short distance after the boy was struck. It does not seem possible that this wheel could have dragged that boy twenty-five feet over the pavement before passing over his body, nor is the skidding alone sufficient to prove a reckless speed. Evidence as to the distance in which an automobile or a street car can be stopped is often very misleading; that presupposes that the party knows that he has to stop the car and is prepared with his hands upon the brakes for that purpose. In driving along when an emergency is created, it takes a moment for the human mind

to grasp the situation, the cause and necessity for the stopping of the car, another moment to reach the levers to apply the brakes. If these boys with this cart were obscured in this dark spot so that they could not be seen, the chauffeur had a clear way before him and was not bound to move as slowly and cautiously as if there were known obstacles ahead. Upon a new trial the jury can be more fully informed as to how dark this spot was at which this accident occurred, and as to whether it was so dark that, in the exercise of reasonable care, this chauffeur should not have seen these boys in time either to have given warning to them, or to have avoided them.

. The judgment and order, I think, should be reversed and a new trial granted, with costs to appellant to abide the event.

The findings that the defendant was guilty of negligence and plaintiff's intestate was free from negligence should be reversed.

CLARKE, P. J., and LAUGHLIN, J., concurred; DOWLING and MERRELL, JJ., dissented.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.